UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA, for the use and benefit of TIMBERLINE CONSTRUCTION GROUP, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-669-JWD-EWD** |
| **APTIM FEDERAL SERVICES, L.L.C., et al.** | |

## RULING AND ORDER

This matter comes before the Court on two motions. First is the *Sureties' Motion to Dismiss Timberline's Third Amended Complaint Pursuant to Rule 12(b)(6)* (Doc. 71) ("*Sureties' Motion to Dismiss*") filed by defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Berkley Insurance Company ("Berkley") ("collectively "Sureties"). Plaintiff Timberline Construction Group, LLC ("Plaintiff") opposes the motion (Doc. 85). The Sureties filed a reply (Doc. 90), and Plaintiff filed a sur-reply (Doc. 98). Second is *Brice Aptim JV, L.L.C.'s Motion to Dismiss Timberline's Third Amended Complaint Pursuant to Rule 12(b)(6)* (Doc. 86) ("*BAJV's Motion to Dismiss*") filed by Brice APTIM JV, L.L.C. ("BAJV"). Plaintiff opposes the motion (Doc. 97). BAJV filed a reply (Doc. 99). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motions are granted.

**I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY**

The following factual allegations are primarily taken from Plaintiff's *Third Amended Complaint*, (Doc. 63). The well-pled allegations are assumed to be true for purposes of this motion. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

This suit stems from a contract between BAJV and the United States Army Corps of Engineers ("USACE") for work on temporary housing after Hurricane Ian in Lee County, Florida (the "Project"). (Doc. 63 at 3.) Pursuant to the Miller Act, 40 U.S.C. § 3131, BAJV obtained a payment bond that bound the Sureties to pay any unpaid amounts in connection to the Project, up to $3,310,107.77 (the "Bond"). (*Id.* at 4.)

BAJV subcontracted one of its members, APTIM, to work on the Project. (*Id.*) APTIM subcontracted Plaintiff to provide construction services on the Project. (*Id.*) The subcontract between APTIM and Plaintiff ("Subcontract") fixed a lump sum price of $3,656,093.30. (*Id.*)

During the course of Plaintiff's work on the Project, there were multiple delays beyond Plaintiff's control. (*Id.* at 5.) Plaintiff notified APTIM of these delays. (*Id.*) After giving notice of the delays, Plaintiff requested extensions of time, but "APTIM issued a Notice of Termination for Default letter to Timberline ("Notice of Termination")." (*Id.* at 10.) On July 10, 2023, Plaintiff sent a notice of claim to APTIM, which was attached to the *Third Amended Complaint* (Doc. 49-4). (Doc. 63 at 11.)

The Notice of Claim's subject line is "Notice of Claim (Response to Notice of Termination for Default)." (Doc. 49-4 at 2.) The Notice describes the delays on the project, Timberline's lack of control over the delays, and APTIM's termination of the Subcontract. (*Id.* at 2–5.) At the end of the Notice, it says "[p]lease consider this letter Timberline's claim under Sections 24 and 31 of the Subcontract Agreement for payment of $3,163,497.97, representing the total sum due and owing to Timberline for work performed under the Subcontract Agreement through the date of the Notice of Termination." (*Id.* at 6.) Section 24 of the Subcontract provides for payment to the subcontractor (Plaintiff) if the subcontract was terminated for convenience. (Doc. 49-3 at 20–21.)

Section 31 of the Subcontract gives the procedure for disputes, including providing a notice of claim. (*Id.* at 24–25.)

Plaintiff asserts a claim against the Sureties for $3,163,497.97 as an unpaid second tier subcontractor, pursuant to 40 U.S.C. § 3133. (Doc. 63 at 12–13.)

## II. RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *In re Great Lakes*, 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *MySpace*, 528 F.3d at 418). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.' " *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.' " *Doe ex*

3

*rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].' " *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

### III. DISCUSSION

#### a. Parties' Arguments

##### i. *Motions to Dismiss* (Doc. 71; Doc. 86)

The Sureties move to dismiss Plaintiff's claim because it did not comply with the Miller Act requirement that the general contractor be given notice within 90 days of termination of the

project and did not allege that it complied with this requirement. (Doc. 71-1 at 3.) They assert that the Notice of Claim submitted by Plaintiff does not mention a claim against BAJV and is solely directed at APTIM. (*Id.* at 4.) The Sureties point to 40 U.S.C. § 3133(b)(2), which requires that a person who does not have a direct contractual relationship with the general contractor must give the general contractor notice within 90 days of the termination of project before making a claim on the payment bond. (*Id.* at 5.) They cite Fifth Circuit caselaw, saying "it is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of the amount due, and that the claim specify the subcontractor allegedly in arrears." (*Id.* (quoting *U.S. for Use & Benefit of Jinks Lumber Co. v. Federal Ins. Co.*, 452 F.2d 485, 488 (5th Cir. 1971)) (internal quotation marks omitted).) Because Plaintiff had a direct relationship with the subcontractor APTIM, and no contractual relationship with BAJV, the claim against the Sureties is subject to the 90-day notice requirement. (*Id.*)

The Sureties assert that, until the *Third Amended Complaint* was filed, Plaintiff incorrectly identified APTIM as the general contractor. (*Id.*) When the Sureties were added to make a claim on the Bond, Plaintiff was required to show that it provided notice to the general contractor. (*Id.*) The Sureties argue that the letter Plaintiff attached to the *Third Amended Complaint* was only directed to APTIM and was never provided to BAJV. (*Id.* at 5–6.) They look to the Bond that was attached to the *Third Amended Complaint*, saying that it identifies BAJV as the general contractor. (*Id.* at 6.) They say that the notice requirement may not be waived and is a condition precedent to bringing a claim under the Miller Act. (*Id.* at 6 (quoting *United States ex rel. Sun Coast Contracting Servs., L.L.C. v. DQSI, L.L.C.*, No. 13-297, 2014 WL 5431373, at *3 (M.D. La. Oct. 21, 2014)).)

The Sureties cite *H & E Equipment Services, Inc. v. Slater*, No. 04-1878, 2007 WL 2174595 (W.D. La. July 25, 2007), where notice was provided to a subcontractor, but did not

5

mention a claim for payment from the general contractor. (*Id.* at 7.) The court there held that the notice must "state a claim directly against the general contractor . . . ." (*Id.* (quoting *Slater*, 2007 WL 2174595, at *4).) The Sureties assert that although "courts have generally been liberal in enforcing the Miller Act's requirements concerning the *method* by which notice is given, they have more rigidly interpreted the Act's requirements for the *contents* of such notice." (*Id.* (quoting *Slater*, 2007 WL 2174595, at *3) (internal quotation marks omitted).) They argue Plaintiff has not pled that it gave BAJV notice of the claim against BAJV, and thus has not stated a Miller Act claim. (*Id.* at 7–8.) Finally, the Sureties say that amendment would not cure these defects, because Plaintiff did not provide notice to BAJV within the 90-day window for notice. (*Id.* at 8–9.)

BAJV's *Motion to Dismiss* makes the same arguments. (Doc. 86-1 at 1–9.)

### ii. *Oppositions* (Doc. 85; Doc. 97)

Plaintiff opposes the *Motion to Dismiss*, saying that through notice to APTIM, BAJV was sufficiently given notice of the claim. (Doc. 85 at 4.) It argues that, because APTIM is a member of BAJV's limited liability company, notice to APTIM constituted notice to BAJV. (*Id.*)

Plaintiff points the Court to Alaskan corporate law to support its argument that notice to APTIM constituted notice to BAJV. (*Id.* at 5.) Under Alaskan law, "a limited liability company has notice or knowledge when notice is provided to a member of the company relating to affairs of the company." (*Id.* (citing Alaska Stat. § 10.50.260).)

Alternatively, Plaintiff argues that, even when notice does not directly name the general contractor, notice to the subcontractor may be sufficient if "they are so intertwined that notice to one is notice to the other." (*Id.* at 6.) "Courts have also looked to how the parties act and communicate and whether they share a common identity, in determining whether providing notice to one entity can constitute notice to another." (*Id.*) It cites *National Surety Corporation v. U.S.*

6

*for the use of Way Panama, S.A.*, where the general contractor and subcontractor were so intertwined that they were considered the same business, meaning that the second-tiered contractor dealt with the general contractor directly. (*Id.* (citing 378 F.2d 294, 295–96 (5th Cir. 1967)).) The two companies in *National Surety Corporation* were owned by the same individual and "essentially operated as one entity." (*Id.* (citing *National Sur. Corp.*, 378 F.2d at 296).) Plaintiff also cites a Florida case that deals with Florida's law similar to the Miller Act that says the same. (*Id.* at 7 (citing *Aetna Cas. and Sur. Co. v. Buck*, 594 So.2d 280, 281 (Fla. 1992)).)

Plaintiffs argues that "[BAJV] and APTIM share a common identity, and APTIM's receipt of [Plaintiff's] notice can and should be attributed to [BAJV]." (*Id.*) The *Third Amended Complaint* alleges that BAJV subcontracted work on the Project to its members, including APTIM, and that "APTIM had a duty to inform [BAJV] of the Notice of Claim." (*Id.*) Plaintiff asserts that the Subcontract identified APTIM as the general contractor on the Project, which supports its argument that the two are essentially the same entity. (*Id.*)

Plaintiff contends that it did not need to strictly adhere to the requirements of the Miller Act, so long as the purpose of the Act is met, i.e. the general contractor has notice of the claim. (*Id.* at 8.) It argues that through emailing the notice to APTIM, BAJV was put on notice of the claim. (*Id.* at 8–9.) Finally, Plaintiff asks for leave to amend if the Court determines that it has not alleged a Miller Act claim. (*Id.* at 9.)

Plaintiff's opposition to BAJV's *Motion to Dismiss* repeats these arguments and adds that this issue is not properly decided on a motion to dismiss. (Doc. 97 at 9–10.) It asserts that whether notice is sufficient "is based on the facts of the specific case . . . ." (*Id.* at 9.) Plaintiff contends that it has sufficiently alleged that BAJV was served notice of the claim and maintains that BAJV's arguments require a factual and legal analysis of the Notice at a time when evidence may be

introduced. (*Id.* at 10.) Therefore, the case is not ripe for decision at the motion to dismiss stage and the motion should be denied. (*Id.* at 9–10.)

### iii. *Replies* (Doc. 90; Doc. 99)

In reply, the Sureties argue that the Miller Act notice requirement may not be changed, and notice to APTIM does not constitute notice to BAJV. (Doc. 90 at 1–2.) They say that Plaintiff's citation to the state law of Alaska and Florida to determine sufficiency of notice is misplaced. (*Id.* at 2.) Rather, they contend that the Subcontract "is governed by the terms of the Prime Contract [between BAJV and UASCE], and the Prime Contract is governed by the laws of the United States . . . The contracts of the United States are governed by the laws of the United States." (*Id.* at 3 (citing Doc. 37-1 at 167, § 52.233–34).)

Regarding Plaintiff's alternative argument that BAJV and APTIM are so intertwined as to be considered the same entity, the Sureties argue that the two entities, while connected, are not essentially the same business. (*Id.*) First, they point to the locations of the two companies: "APTIM's office is located in Baton Rouge, Louisiana. BAJV's office is located in Anchorage, Alaska." (*Id.*) Further, they argue that BAJV and APTIM's roles in the Project did not merge. (*Id.*)

The Sureties distinguish the cases cited by Plaintiff. (*Id.*) They say that the companies in *National Surety Corporation* were found to be intertwined because of a number of factors that are not present in this case. (*Id.*) Specifically, both entities were controlled by the same person and the subcontractor took on the role of the general contractor. (*Id.* at 3–4.) They point out that "the Fifth Circuit acknowledged that despite similar ownership, it is possible for the entities to serve in separate roles such that notice to one would not constitute notice to the other." (*Id.* at 4 (citing *Nat'l Sur. Corp.*, 378 F.2d at 295).) The Sureties argue that BAJV has always been the general contractor, and APTIM never assumed that role. (*Id.*) They contend that the Florida case cited by

8

Plaintiff is irrelevant, because it deals with a Florida statute not at issue in this case. (*Id.*) To the extent that the case is relevant, the companies in *Buck* were owned by the same person and were run from the same address. (*Id.* at 4–5.) Again, the Sureties argue that the facts here are distinguishable because BAJV and APTIM are run from different states and by different people. (*Id.* at 5.)

The Sureties reiterate their argument that the Miller Act's notice requirement cannot be waived. (*Id.* (citing *Sun Coast Contracting Servs.*, 2014 WL 5431373).) They cite to an Eleventh Circuit case that applies this principle. (*Id.*) In *Maccaferri Gabions v. Dynateria*, although the general contractor received the letter giving notice of the claim, the letter did not inform the general contractor that a claim would be made "directly against it." (*Id.* at 5–6 (quoting 91 F.3d 1431, 1437 (11th Cir. 1996)) (quotation marks omitted).) The court cited Fifth Circuit jurisprudence highlighting the necessity of stating a claim against the general contractor directly. (*Id.* at 6.) The Sureties argue that the same is true here in that the notice letter did not contain any language asserting a claim directly against BAJV. (*Id.*)

Finally, the Sureties say that Plaintiff should not be given leave to amend because it did not provide notice to the general contractor within the 90-day window. (*Id.* at 6–7.) They argue that Plaintiff cannot plead that it satisfied the requirements of the Miller Act, and leave should be denied. (*Id.* at 7.)

BAJV repeats the Sureties' arguments and adds that this issue may be resolved at the motion to dismiss stage because Plaintiff attached the Notice to the operative complaint; "when the supporting documents and complaint are in conflict, the documents control." (Doc. 99 at 9–10 (citing *United States ex rel. Siteworks Bldg. & Dev. v. Advanced Elec. Installations*, 2007 U.S. Dist. LEXIS 115314, at *6–7 (S.D. Fla. Apr. 9, 2007)).) It says that the Notice is directed to

9

APTIM not the general contractor, and the Bond (which is also attached to the complaint) shows that BAJV was the general contractor. (*Id.* at 10.)

### iv. *Sur-Reply* (Doc. 98)

Plaintiff was given leave to file a sur-reply. (Doc. 98 at 1.) First, it argues that the Sureties should not rely on BAJV's certificate of interested persons to determine whether APTIM is a managing member of BAJV's limited liability company, because this document is not properly considered on a motion to dismiss. (*Id.* at 1–2.) Further, Plaintiff says that its argument centers on whether APTIM is a member of BAJV, and whether it is a managing member is of no consequence. (*Id.* at 2.) It contends that state law is relevant here to determine whether notice to one entity can constitute notice to another, as the Miller Act does not address that issue. (*Id.* at 2–3.)

Even if state law does not apply, Plaintiff argues that the notice was sufficient. (*Id.* at 3.) It says that whether the notice method was sufficient is a case specific analysis, and "notice to a member and representative of a limited liability company meets the purpose of the Miller Act's notice requirements." (*Id.*)

### b. Law and Analysis

The Miller Act, 40 U.S.C. § 3131 *et seq.*, requires those who contract with the federal government for "construction, alteration, or repair of any public building or public work," for jobs of more than $100,000, post a performance bond and a payment bond. 40 U.S.C. § 3131(b). The payment bond has a surety that secures the payment of those supplying labor and materials on the project. *Id.* at 3131(b)(2).

> The [Miller] Act gives suppliers and subcontractors the right to sue a prime contractor in U.S. district court for the amount owed to them . . . The Act creates a right to sue when the plaintiff has "furnished labor or material in carrying out work provided in a contract for which a payment bond is furnished under § 3131 of this title."

10

*Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 220 (5th Cir. 2012).

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. The notice shall be served--
>
> > (A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence; or
> > (B) in any manner in which the United States marshal of the district in which the public improvement is situated by law may serve summons.

40 U.S.C. § 3133(b)(2). "The giving of such notice is a condition precedent to a supplier's right to sue on the payment bond." *Liles Const. Co. v. United States*, 415 F.2d 889, 890 (5th Cir. 1969) (citing *Coffee v. U.S. for Use and Benefit of Gordon*, 157 F.2d 968 (5th Cir. 1946)).

> The purpose of the notice requirement of the Miller Act is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly. Without a statutory period, materialmen might delay claims unreasonably, thus frustrating the general contractor's need to be able to commit his funds to other activities. *See Bowden v. United States for Use and Benefit of Malloy*, 9 Cir. 1956, 239 F.2d 572, *cert. denied*, 1957, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909; *United States for Use and Benefit of J. A. Edwards & Co. v. Thompson Construction Corp.*, 2 Cir. 1959, 273 F.2d 873. While the provisions of the notice requirement should be construed liberally, *United States for Use and Benefit of Hallenbeck v. Fleisher Engineering & Construction Co.*, 2 Cir. 1939, 107 F.2d 925, *aff'd*, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12, it is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due, and that the claim specify the subcontractor allegedly in arrears. *See Bowden v. United States for Use and Benefit of Malloy, supra*; *United States for Use and Benefit of American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co.*, 8 Cir. 1941, 122 F.2d 600.

*Jinks Lumber*, 452 F.2d at 487–88.

The Fifth Circuit elaborated, stating "the written notice and accompanying oral statements must inform the general contractor, expressly or impliedly, that the supplier is looking to the

11

general contractor for payment, so that 'it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.' " *U.S. for Use and Benefit of Kinlau Sheet Metal Works, Inc. v. Great Am. Ins. Co.*, 537 F.2d 222, 223 (5th Cir. 1976) (quoting *Jinks Lumber*, 452 F.2d at 488).

Although, as Plaintiff argues, the method by which notice is given is generally scrutinized liberally, courts "have more rigidly interpreted the Act's requirements for the *contents* of such notice." *Slater*, 2007 WL 2174595, at *3 (citing *Maccaferri Gabions*, 91 F.3d at 1437). In *Maccaferri Gabions*, the Fifth Circuit said sending the general contractor a copy of a collection letter addressed to the subcontractor and, as to the content of the letter, only mentioning a claim against the subcontractor, did not constitute sufficient notice to the general contractor. *Id.* at *4 (citing *Maccaferri Gabions*, 91 F.3d at 1437).

The Fifth Circuit has repeatedly held that the notice must "state a claim directly against the general contractor . . . ." *Jinks Lumber*, 452 F.2d at 488. The First, Ninth, and Eleventh Circuits have cited Fifth Circuit jurisprudence supporting the holding that the notice must at least indicate to the general contractor that the second tier subcontractor will look to it for payment. *See U.S. for Use and Benefit of Water Works Supply Corp. v. George Hyman Const. Co.*, 131 F.3d 28, 33 (1st Cir. 1997) (citing *Kinlau Sheet Metal Works*, 537 F.2d at 223); *U.S. for Use of San Joaquin Blocklite v. Lloyd E. Tull, Inc.*, 770 F.2d 862, 865 (9th Cir. 1985) ("The general contractor must be able to infer from the communication that he receives from the supplier that he is being asked for payment, and not for help with pressuring the subcontractor to pay. . . . The written notice required by the statute must expressly or impliedly inform the general contractor that the supplier expects him to pay for labor or materials supplied to the subcontractor."); *Maccaferri Gabions*, 91 F.3d at 1437 (citing *Kinlau Sheet Metal Works*, 537 F.2d at 223).

12

Here, Plaintiff asserts a Miller Act claim against the Sureties—the parties that have secured the Bond—and BAJV—the general contractor. (Doc. 49-4.) Plaintiff attached the notice of claim letter to the *Third Amended Complaint*, so it is properly considered on motion to dismiss. *Inclusive Cmtys. Project*, 920 F.3d at 900. The Notice of Claim sent from Plaintiff to APTIM pertained to APTIM's breach of the Subcontract. (Doc. 49-4 at 2.) The Notice says "[p]lease consider this letter Timberline's Notice of Claim pursuant to Section 31 of the Subcontract Agreement." (*Id.*) It characterizes the claim as against APTIM for improperly terminating the Subcontract for Plaintiff's default. (*Id.* at 2–3.) It outlines the reasons for delay, which are supported by the notice of delay letters attached to the Notice of Claim. (*Id.* at 2–5.) Finally, the letter says "[p]lease consider this letter Timberline's claim under Sections 24 and 31 of the Subcontract Agreement for payment of $3,163,497.97, representing the total sum due and owing to Timberline for work performed under the Subcontract Agreement through the date of the Notice of Termination." (*Id.* at 6.) The Notice of Claim letter attached to the *Third Amended Complaint* does not mention a claim against BAJV, nor does it include a notice of a claim on the Bond. (*Id.* at 2–6.)

The Notice of Claim does not put BAJV on notice that Plaintiff was seeking payment from BAJV or making a claim on the Bond. Even if the method of notice—notifying BAJV of the claim through notice to APTIM—was sufficient, the content of the Notice was insufficient. The Notice was directed to APTIM and only mentioned Plaintiff's breach of contract claim against APTIM. (Doc. 49-2 at 2–6.) Since the Notice does not mention a claim on the Bond, even if BAJV was given notice, it does not plainly appear that Plaintiff was looking to BAJV for payment. *See Kinlau Sheet Metal Works*, 537 F.2d at 223. When taking all well pled allegations in the *Third Amended Complaint* as true, the Court need not accept as true the legal conclusion that Plaintiff gave adequate notice. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854

13

(5th Cir. 2012). Therefore, the Notice of Claim was insufficient under the § 3133(b)(2) of the Miller Act, which is a condition precedent to a Miller Act claim. *See Liles Const.*, 415 F.2d at 890 (citing *Coffee*, 157 F.2d at 968). Plaintiff's Miller Act Claim will be dismissed.

### IV.   LEAVE TO AMEND

Plaintiff seeks in the alternative another opportunity to amend. The Court will deny this request.

Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). However, "[l]eave to amend is in no way automatic . . . the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994 (citation and internal quotation marks omitted)). The Fifth Circuit further described a district court's discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." [*Jones*, 427 F.3d at 994] (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. and Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Id.* (citation and internal quotation marks omitted).

*Id.*

In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs*, 331 F.3d at 508).

Having carefully considered the matter, the Court will deny leave to amend. First, as stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Id.* (citation omitted). Here, Plaintiff has amended its complaint three times, and only added BAJV and the Sureties in the *Third Amended Complaint*. (Doc. 63.) More importantly, another amendment would be futile. The Miller Act requires that the general contractor be given notice of the claim within 90 days of the last day the claimant worked on the project. 40 U.S.C. § 3133(b)(2). The Notice of Termination was received by Plaintiff on June 27, 2023, well over 90 days ago. (Doc. 49-4 at 2.) Any attempt to now notify BAJV of the claim would be far too late, so Plaintiff would not be able to adequately plead that it has met all of the requirements of the Miller Act. Consequently, Plaintiff will be denied leave to amend, and the Miller Act claims against BAJV and the Sureties will be dismissed with prejudice. *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 679 (M.D. La. 2019) (deGravelles, J.) (denying leave to amend when plaintiff should have had notice of issue from court's ruling on original motion to dismiss, and when further amendment would be futile); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321–22 (M.D. La. 2021) (deGravelles, J.) (same); *Martin v. Roy*, No. 20-339, 2022 WL 894599, at *13–14 (M.D. La. Mar. 25, 2022) (deGravelles, J.) (same).

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Sureties' Motion to Dismiss Timberline's Third Amended Complaint Pursuant to Rule 12(b)(6)* (Doc. 71) and *Brice Aptim JV, L.L.C.'s Motion to Dismiss Timberline's Third Amended Complaint Pursuant to Rule 12(b)(6)* (Doc. 86) are **GRANTED** and all claims against Brice Aptim JV, L.L.C., Liberty Mutual Insurance Company, and Berkley Insurance Company are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on February 6, 2025.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**